FRANK ZORRILLA, ETC., ET AL., Plaintiffs and Appellants, v. FAJARDO EASTERN SUGAR and/or C. BREWER PUERTO RICO, INC., Defendant and Appellee.

No. R-67-234.  Decided April 29, 1969.

*Nicolás Nogueras, Jr.,* for appellants. *McConnell, Valdés, Kelley & Sifre* and *Baltazar Corrada* for appellee.

Second Division composed of Mr. Justice Hernández Matos, as Chief Judge of Division, Mr. Justice Santana Becerra, Mr. Justice Dávila, and Mr. Justice Torres Rigual.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

On August 30, 1963, eight workers of the Fajardo Eastern Sugar filed a claim for wages claiming compensation for extra hours worked. The claim amounted to $30,888.09 and to $61,776.68, with the double penalty.

On February 20, 1964, defendant answered the complaint denying owing any amount to plaintiffs. It alleged certain special defenses relating to prescription.

On June 24, 1964, defendant admitted that it was proper to reliquidate the wages to plaintiffs and to compensate the difference in wages, and that the only disagreement between the parties was the method of making the computations.

On October 20, 1966, the parties signed and submitted a stipulation which served as the basis for the decision of the case by the trial court. In its pertinent part said stipulation provides:

"1.—That the parties consider that the above-entitled case may be submitted to the consideration of the court by a stipulation of the facts and for those purposes they stipulate the following:

"(a)—That according to the computations prepared by the Department of Labor, defendant would owe to plaintiffs the sums set forth below, not including the liquidation of the damages or penalties provided by law: Pedro Nieves, $2,144.97; Percy Foret, $3,703.67; Práxedes Corcino, $956.20; Hermenegildo Molina, $1,136; Cruz Cruz Otero, $2,443.85; Jesús E. Ayala, $2,063.73; José Hernández, $3,728.82, and Pedro Soto, $962.98, for an aggregate amount of $17,140.22, plus an equal amount for penalty.

"(b)—That according to the computations prepared by defendant, the latter would owe plaintiffs the amounts set forth below: Pedro Nieves, $24.23; Percy Foret, 22.44; Práxedes Corcino, $18.45; Hermenegildo Molina, $15.90; Cruz Cruz Otero, $21.54; Jesús E. Ayala, $21.54; José Hernández, $22.44; and Pedro Soto, $21.54, for an aggregate amount of $168.08 plus an equal sum for penalty.

"(c)—That the fundamental controversy between the parties is centered about the formula utilized to determine the hourly rate which shall serve as the basis for the compensation of regular and extra hours of work.

"(d)—For the purposes of placing the court in a position to solve the principal controversy in this case concerning the formula to be followed in order to determine the regular rate per hour which shall serve as basis for compensating overtime work, we copy below a typical labor clause taken from the contract executed between plaintiffs and defendant for the grinding season of the year 1954:

'COMPENSATION TO BE PAID:—The Fajardo Sugar Company shall compensate the services of Carmelo Quiñones and Julio Santiago González in the sum of TWO THOUSAND FIFTY DOLLARS ($2,050) each, for the duration of the grinding season 1953–54, from its beginning to not later than one week after the termination of the grinding, it being understood that this amount will cover a period not in excess of six months. This amount will be paid to them in six installments, the sum of THREE HUNDRED FORTY–ONE DOLLARS AND SIXTY-SIX

CENTS ($341.66) corresponding to each one of these men at the end of each month. The difference to cover the total of $2,050 will be paid to them upon the performance or fulfillment of this contract.—2.—The Fajardo Sugar Company shall compensate the services of Pedro Soto, Pedro Nieves Figueroa, Cruz Cruz, and Erineo Ayala, in the sum of ONE THOUSAND NINE HUNDRED DOLLARS ($1,900) each, for the duration of the grinding season 1953–54, from its beginning to not later than a week after the termination of the grinding; it being understood that this amount will cover a period not in excess of six months. This amount will be paid in six installments, the sum of THREE HUNDRED SIXTEEN DOLLARS AND SIXTY-SIX CENTS ($316.66) corresponding to each one of these men at the end of each month. The difference to cover the total amount of $1,900 will be paid to them upon the performance or fulfillment of this contract.'

"(e)—The formula utilized by the Department of Labor to determine the regular rate per hour for the purposes of computing the extra hours, consisted in dividing the total amount of the sum guaranteed for each grinding season by the number of regular hours actually worked. For example, if during the sixth-month period, which comprises 26 workweeks, the claimant worked all the regular hours comprised in each week, the total wage established in the contract for the six months is divided by the regular hours worked to determine the rate per hour; if instead of working all the regular hours comprised in said 26 weeks the complainant worked only one half of the regular hours comprised in said 26 weeks or any other proportion less than the total number of regular hours comprised in said 26 weeks, under the formula followed by the department of Labor, the total wage for the six months is divided by the number of regular hours actually worked.

"(f)—The formula followed by defendant to determine the regular rate per hour for the purposes of computing the extra hours of work was to divide the total wage corresponding to the six months of the grinding season by 1040, which corresponds to 26 weeks of the grinding season of 40 hours each, compensating then each regular hour worked on the basis of the resultant regular rate and compensating the extra hours at double rate.

"(g)—The parties stipulate that defendant compensated the extra hours to plaintiffs over and in addition to the total wage

established for the six months of work, since said wage covered only the regular hours of work, and the controversy centers about the formula which should be utilized to determine the regular rate to serve as the basis for compensating extra hours at double rate and the hours between forty and forty-eight a week at regular rate.

.  .  .  .  .  .  .  .  .  .

"(i)—The parties stipulate that plaintiffs' claims for the grinding seasons 1952 and 1953 have prescribed pursuant to Act No. 96 of June 26, 1956."

On June 8, 1967, the trial court rendered judgment relying on the aforementioned stipulation. The court stated:

"The controversy in this case consists in determining the regular rate per hour for the purposes of compensating the hours worked by the claimants in excess of the eight daily hours and the seventh day. There is no difference of opinion between the parties as to this point.

"The Secretary of Labor of Puerto Rico considers that the determination of the regular rate per hour should be done taking into consideration the number of regular hours actually worked by plaintiffs during each of the grinding seasons, and dividing the wage guaranteed by said number of hours in order to obtain the regular rate.

"The formula adopted by defendant to determine the regular rate per hour for the purposes of computing the wage corresponding to the extra hours of work was to divide the total wage corresponding to the six-month grinding season by 1,040, which corresponds to 26 weeks of the grinding season of 40 hours each, then compensating each regular hour worked over the 6 of the remaining regular rate and compensating the extra hours at double rate."

.  .  .  .  .  .  .  .

"Defendant, apparently prompted by its desire or need to have available the number of sugar laborers required for the normal operation of its factory during the different periods of the grinding season to which the complaint refers, decided to execute a contract with them by virtue of which it guaranteed a fixed income during the six-month term of the grinding season.

For the purposes of the controversy raised, the difference in the wage of the persons integrating one or the other group of complainants is immaterial.

"We must then resort, immediately, to the legal provision on which the complainants rely to maintain that their claim is correct."

Construing § 5 of Act No. 379 of May 15, 1948, which it deemed applicable, the court concluded:

"The last sentence of § 5 of Act No. 379 seems to agree with complainants' view in their interpretation as to the method for determining the wage rate which will serve as the basis to fix and at the same time to compute the wage for extra hours worked.

"In our opinion the daily, weekly, monthly wage or wage otherwise stipulated is determined, not by the number of regular hours really and actually worked by the employee, but by the number of regular hours worked during that same period, pursuant to the provisions of the law. It seems to us that this is the most reasonable and fair interpretation according to the terms of the labor contract agreed upon by the parties and to a reasonable interpretation of the provisions contained in § 5 of Act No. 379, applicable to the working day. Hence, Act No. 379 itself provides that if an employee works for a weekly or monthly wage, said wage shall cover only the payment of the regular working hours during each week or each month.

"Perhaps we are departing somewhat from what apparently is, at first sight, the letter of the law in order to reach the most equitable and fair solution of the question in issue. In this sense we agree with the defendant in that the formula proposed by plaintiffs would be an absurdity in maintaining that if a laborer works under a labor contract, as in the case at bar, in excess of the 8 regular hours, he would be entitled to a compensation at a higher rate for extra hours than if he works the complete regular working day. Evidently, this could not be the legislative intent. *Rodríguez* v. *Bosch Brothers*, 32 P.R.R. 554; *Solá* v. *Orcasitas,* 11 P.R.R. 78.

"For the reasons stated we adopt defendant's formula to compute the regular wage rate as the basis to determine the amount for the extra hours worked by each one of the plaintiffs and, con-

sequently, to decide, as we are deciding, that defendant owes to plaintiffs the following amounts for wages:

| | |
|---|---|
| Pedro Nieves | $24.23 |
| Percy Foret | 22.44 |
| Práxedes Corsino | 18.45 |
| Hermenegildo Molina | 15.90 |
| Cruz Cruz Otero | 21.54 |
| Jesús E. Ayala | 21.54 |
| José Hernández | 22.44 |
| Pedro Soto | 21.54 |

"For a total of $168.08, plus an equal amount for each plaintiff as the penalty imposed by law."

In this case § 5 of Act No. 379 of 1948, which provides the following, is applicable:

"Every employer who employs or permits an employee to work during extra hours shall be obliged to pay him for each extra hour a wage rate equal to double the rate agreed upon for regular hours; *Provided, however,* That every employer in any industry in Puerto Rico covered by the provisions of the Fair Labor Standards Act enacted by the Congress of the United States of America on June 25, 1938, as heretofore or hereafter amended, shall be under obligation to pay only for each hour of work in excess of the legal eight-hour working day, or in excess of forty (40) hours a week, a wage at the rate of not less than time and a half the rate of wage agreed upon for regular hours, save when by a decree of the Minimum Wage Board or by a collective labor agreement, other working and/or compensation standard is heretofore or hereafter fixed. *To determine the wage rate agreed upon for regular hours of work, the daily, weekly, or monthly wages, or wages otherwise stipulated, shall be divided by the number of regular hours worked during that same period in accordance with the provisions of this Act."* (Italics ours.)

Pursuant to the provision of § 5 which we have emphasized, defendant-appellee maintains that for the purposes of computing the wage for regular hours, the number 1040 should be used as the divisor because these are the regular working hours comprised in the 26-week period. See Stipula-

tion, 1-(f). In other words, taking as an example the compensation of $2,050 agreed upon for the grinding season of the year 1953–54, this amount should be divided by 1040 to obtain the regular rate per hour which, pursuant to § 5, serves as the basis to compute the extra hours. Plaintiffs-appellants maintain that in order to determine that regular rate per hour, $2,050 should be divided by the number of regular hours comprised in the grinding season.

The problem as to the method of computing the regular rate per hour raised in this appeal has not been previously considered by us. Our decisions involving controversies on the computation of regular rates per hour, *cf. Olazagasti* v. *Eastern Sugar Associates*, 79 P.R.R. 88 (1956); *Berríos* v. *Eastern Sugar Associates*, 79 P.R.R. 647 (1956); *Laborde* v. *Eastern Sugar Associates*, 81 P.R.R. 468 (1959), do not solve the controversy at bar. This case does not present either the situation we considered in a more recent case, *Maldonado* v. *Eastern Sugar Associates*, 93 P.R.R. 351 (1966), where after a grinding season of 23 weeks and a divisor of 1,104 (23 x 48) for the extra hours had been agreed upon, the trial court decided on the basis of a divisor of 920 hours (23 x 40) under the erroneous assumption of law that the regular week was of 40 and not of 48 hours, and on that ground annulled that part of the agreement.

Defendant-appellee maintains that to accept the formula of the Secretary of Labor, who represents the plaintiffs, would be to give an interpretation to the law which would result in an absurdity. Defendant cites several instances which actually would result in an absurdity, such as if during the grinding season a laborer had worked only one hour, the rate per hour would have been $2,050 for the regular rate and $4,100 for the extra hour. These instances, which as appellee affirms would lead to an absurdity, apparently impressed the trial court.

■ The position assumed by the complainant-workers is not as interpreted by the defendant. Where § 5 of Act No. 379 states that "to determine the wage rate agreed upon for regular hours of work, the daily, weekly, or monthly wages, or wages *otherwise stipulated,* shall be divided by the number of regular hours *worked* during that same period in accordance with the provisions of this Act," the phrase "regular hours worked" means regular hours susceptible of or subject to being worked during the period, and not those which a determined worker, for personal or other reasons, has actually worked during the period. In other words, the phrase "regular hours *worked*" should be read as regular hours subject to being worked, in a determined period of compensation. This interpretation of the law does not give rise to the appearance of those absurd situations in the computation of wage rate for regular hour which appellee presents.

■ This case deals with sugar laborers. For the reasons stated by the trial court in its conclusions, a specific labor contract was executed with these workers. Said labor contract is the law which governs the mutual obligations of the parties. According to the contract, as copied above, the Fajardo Sugar bound itself to compensate these plaintiffs the amount of $2,050 each *for the duration of the grinding season* of 1953–54, and until one week after the termination of the grinding, but as a whole, said period should not exceed six months. The clause which follows in the contract as to the manner of the payment of the sum of $2,050 divided into monthly partial payments establishes only the manner of paying the compensation, but it does not establish the compensation.

■ In any year, of those involved in this claim, which from the beginning of the grinding season and until a week after the termination of the grinding comprises 26 weeks, the appellee and the trial court are right in that the divisor to be

used to determine the compensation for regular hours should be 1,040, the number of regular hours comprised in 26 weeks according to the stipulation submitted.

In those cases in which the duration of the grinding season from the beginning and until one week after the termination of the grinding does not comprise 26 weeks, the divisor should be the number representing the number of regular hours subject to being worked during *the duration of that particular grinding season from its beginning until not later than one week after the termination of the grinding.*

In executing the labor contract, defendant could not ignore the fact that there are grinding seasons which cover longer periods and grinding seasons which cover shorter periods. In agreeing to compensate these workers $2,050 "for the duration of the grinding season" this was the compensation agreed upon, irrespective of whether the grinding season was longer or shorter. Of course, whatever the fluctuation from year to year, it could never be possible that the grinding season last one hour, an obviously absurd situation which by way of illustration is offered by appellee.

By way of comment, in the administrative interpretation of the federal wage legislation, a view has been adopted in conformance with the foregoing conclusion. *Cf. Bay Ridge Co.* v. *Aaron,* 334 U.S. 446, 464. As may be seen in that case, what governs the regular wage rate per hour in this case is the *employment contract.*

In conformance with the foregoing, the judgment rendered by the Superior Court, Humacao Part, on June 8, 1967, will be set aside and the case will be remanded in order that the regular wage rate per hour be computed for the purposes of the extra hours, as follows:

(1) In those years in which the grinding season comprised 26 weeks, by dividing $2,050 by 1040, as stipulated.

(2) In those other years involved, in which the grinding season comprised less than 26 weeks, by dividing $2,050 or the

amount of the compensation agreed upon for that grinding season by the number which results as the number of regular hours of work comprised in the period of that particular grinding season, from its beginning and until a week after the termination of the grinding, as specified in the labor contract.

Judgment will be rendered accordingly.